| | |
|---|---|
| **DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO.**<br>1437 Bannock Street, Denver, CO 80202<br>Telephone: (720) 865-8301 | DATE FILED: June 6, 2022 2:00 PM<br>FILING ID: 57F0EA4306998<br>CASE NUMBER: 2022CV31596 |
| **DOUGLAS SMITH BUILDERS LLC**,<br><br>Plaintiff,<br><br>v.<br><br>**STATE FARM FIRE AND CASUALTY COMPANY,** an Illinois corporation,<br><br>Defendant. | ^COURT USE ONLY^ |
| Tanner W. Havens, No. 56413<br>tanner@furtadolaw.com<br>David J. Furtado, No. 28002<br>dfurtado@furtadolaw.com<br>Furtado Law PC<br>3773 Cherry Creek North Drive, Ste. 755<br>Denver, CO 80209<br>Telephone: (303) 755-2929<br>Facsimile: (303) 309-6463 | Case No:<br><br>Division: |
| **COMPLAINT AND JURY DEMAND** ||

Plaintiff Douglas Smith Builders LLC ("Plaintiff"), by counsel, for its Complaint and Jury Demand against Defendant State Farm Fire and Casualty Company ("Defendant"), alleges as follows:

## PARTIES

1. Plaintiff is a limited liability company formed and authorized to business in Colorado, with its principal place of business located at P.O. Box 903, Castle Rock, CO 80104. Plaintiff operates under the trade name Diamond Exteriors.

**EXHIBIT A**

2. Defendant is an Illinois corporation authorized to do business in Colorado, with its principal place of business located at One State Farm Plaza, Bloomington, IL 61710.

## JURISDICTION AND VENUE

3. This Court has personal jurisdiction over Defendant because this matter arises from a contract to insure property within the State of Colorado. C.R.S. § 13–1–124(1)(d).

4. This Court has subject matter jurisdiction over this matter because this is a civil case, and such jurisdiction is not limited by statute or constitutional provision. Colo. Const. art. VI, § 9(1).

5. Venue is proper in this Court because the Defendant is a nonresident of this state, and the County of Denver is designated in this complaint. C.R.C.P. 98(c)(1).

## FACTUAL ALLEGATIONS

6. Defendant executed an insurance contract with Rosa and Jesse Vazquez (the "Insureds") designated as policy number 06–B2–G798–4 (the "Policy").

7. The Policy insured against accidental direct physical loss to the residential property located at 7764 Solstice Way, Castle Rock, CO 80108 (the "Property").

8. On June 26, 2020, while the Policy was in effect, a storm caused wind and hail damage to the Property.

9. Upon information and belief, the Insureds timely reported the damage to Defendant.

10. Defendant then issued the Insureds claim number 06–23H2–27L (the "Claim").

11. On August 12, 2021, the Insureds entered into a contract with Plaintiff, by which Plaintiff agreed to repair the damage to the Property associated with the Claim in exchange for the Insureds' right to all benefits paid by Defendant on the Claim, less any deductible paid by the Insureds.

12. A representative of Defendant first inspected the Property for damage on August 17, 2021.

13. On September 5, 2021, a representative of Defendant, Anthony Wigley, drafted an estimate (the "Initial Estimate") of the repairs to be performed to the Property.

14. The Initial Estimate set the amount of loss at $2,721.90 replacement cost value (RCV).

15. The scope of repairs set forth in the Initial Estimate were limited to replacement of rain caps on the roof, replacement of gutters on the front, right, and rear elevation, debris removal, and roofing labor minimums.

16. Defendant then paid the Insureds $474.90 on the Claim, which was the total of the Initial Estimate, less the Insureds $2,247.00 deductible.

17. The Insureds disagreed with the scope and amount of loss set forth in the Initial Estimate, and as a result, on September 20, 2021, the Insureds hired Bryan Newman of Ally Claim Services as their public adjuster for the Claim.

18. On October 7, 2021, Ally Claim Services prepared and submitted an estimate (the "PA Estimate") to Defendant for the scope of repairs to the Property necessitated by the damaged caused on the date of loss.

19. The PA Estimate set the amount of loss at $69,978.78 RCV.

20. The scope of repairs set forth in the PA Estimate included, among other things, replacement of the entire roof, replacement of all gutters, painting the exterior of the Property, staining the exterior deck, and overhead and profit.

21. The PA Estimate contained 157 photographs of the Property.

22. Fifty photographs within the PA Estimate showed identifiable instances of hail damage to the roof.

23. On or about November 10, 2021 and December 15, 2021, Mr. Newman and a representative of Defendant reinspected the Property for damage caused on the date of loss.

24. During the reinspections, Mr. Newman put Defendant's representative on notice of various hail-damaged components of the Property that were unaccounted for in Defendant's initial estimate, such as damage to the roofing shingles, gutters, window screens, paint, overhead garage doors, and air conditioning unit.

25. On December 23, 2021, Defendant drafted a supplemental estimate (the "Supplemental Estimate").

26. The Supplemental Estimate set amount of loss $15,025.12 RCV.

27. The scope of repairs set forth in the Supplemental Estimate accounted for the damage caused to all the gutters, window screens, paint, and air conditioning unit.

28. Despite Defendant's knowledge of clearly identifiable hail damage to the roofing shingles of the Property that would otherwise call for complete replacement of the roof, Defendant's supplemental estimate only accounted for repairs to the soft metals of the roof.

29. Defendant then paid the Insureds $4,361.54 on the Claim, which was the total of the Supplemental Estimate, less prior payments to the Insureds, less the Insureds' $2,247.00 deductible.

30. Shortly after Defendant issued the Supplemental Estimate, a complaint was filed with the Colorado Division of Insurance on behalf of the Insureds.

31. Defendant responded to the complaint on January 26, 2022 and stated that the damage to the roof was "not consistent with hail damage or covered accidental direct physical loss," and declined to reinspect the Property further.

32. On February 18, 2022, the Insureds demanded appraisal pursuant to the terms of Policy.

33. On March 3, 2022, Defendant informed the Insureds that it would not comply with the Insureds demand for appraisal pursuant to the Policy by stating, "[I]t appears that you dispute whether there is damage to the roof shingles. This issue is not a dispute over the amount of loss of an item of covered damage. The appraisal provision in the policy is to resolve differences in the price of repairs which State Farm determined were covered."

34. On April 19, 2022, the Insureds executed another assignment of post-loss benefits arising from the Claim to Plaintiff.

35. Plaintiff, by counsel, corresponded with Defendant in April and May 2022 to achieve a resolution to the disputes surrounding the Claim.

36. Defendant declined to discuss possible resolutions to the dispute regarding the Claim, but rather, reiterated its position that the roof was not covered under the Policy.

37. When asked for an explanation as to why the roof was not covered considering the overwhelming documentation supporting coverage, Defendant merely stated, "[O]ur position remains the same."

38. Because of Defendant's actions and omissions in the adjustment of the Claim, Plaintiff has incurred and continues to incur damages.

## FIRST CLAIM FOR RELIEF
*(Breach of Contract)*

39. Plaintiff realleges and incorporates the preceding paragraphs of this Complaint and Jury Demand as if fully set forth herein.

40. Plaintiff is a party to the Policy as an assignee of the Insureds' post-loss benefits.

41. Plaintiff and the Insureds have performed their duties under the Policy.

42. Under the Policy, Defendant had a duty to pay benefits for accidental direct physical loss to the Property unless otherwise limited or excluded.

43. Defendant breached the Policy by failing to pay benefits for the replacement of the roof, which was damaged by accidental direct physical loss.

44. As a result of Defendant's breach, Plaintiff has incurred and continues to incur damages.

## SECOND CLAIM FOR RELIEF
*(Violation of C.R.S. § 10-3-1115 and Relief Pursuant to C.R.S § 10-3-1116)*

45. Plaintiff realleges and incorporates the preceding paragraphs of this Complaint and Jury Demand as if fully set forth herein.

46. Under C.R.S. §§ 10–3–1115(1)(a), a person engaged in the business of insurance is proscribed from unreasonably delaying or denying payment of a claim for benefits owed to or on behalf of a first-party claimant.

47. Plaintiff is a first-party claimant under C.R.S. § 10-3-1115(b)(I).

48. An insurer's delay or denial is unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action. C.R.S. § 10–3–1115(2).

49.     Defendant unreasonably denied authorizing payment for the replacement of the roof at the Property.

50.     The cost to replace the roof is a covered benefit under the Policy because it sustained accidental direct physical loss and was not otherwise limited or excluded.

51.     Defendant's denial of this covered benefit was unreasonable because of the documented evidence of damage to the roof submitted to Defendant, as well as, at the time of its denial, coverage had already been extended to other hail-damaged components of the Property.

52.     Defendant unreasonably delayed authorizing payment for the covered benefits set forth in the Supplemental Estimate.

53.     Defendant's delay was unreasonable because the covered benefits paid for in the Supplemental Estimate were ascertainable at the time of the initial inspection and should have been included in the Initial Estimate.

54.     Due to Defendant's unreasonable delay and denial, Plaintiff seeks to recover reasonable attorney fees and court costs and two times the covered benefit pursuant to C.R.S. § 10–3–1116(1).

**PRAYER FOR RELIEF**

Therefore, Plaintiff requests that this Court enter judgment in their favor and against Defendant on its Claims for Relief as follows:

1.      Two times the amount of all covered benefits under the Policy;

2.      Costs, expert witness fees, and attorneys' fees per statute incurred in prosecuting their claim;

3.      Pre- and post-judgment interest; and

4.      For such other further relief as this Court may deem just.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Dated: June 6, 2022

                              FURTADO LAW PC

                              <u>*/s/ Tanner W. Havens*</u>
                              Tanner W. Havens
                              tanner@furtadolaw.com
                              David J. Furtado
                              dfurtado@furtadolaw.com
                              Furtado Law PC
                              3773 Cherry Creek North Drive, Suite 755
                              Denver, CO 80209
                              (303) 755-2929
                              ***Attorneys for Plaintiff***